UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
EASTERN DIVISION
(at Ashland)

| | | |
|---|---|---|
| JOANIE M. DYER, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 0: 12-0098-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| CAROLYN W. COLVIN, | ) | **MEMORANDUM OPINION** |
| Acting Commissioner of Social Security, | ) | **AND ORDER** |
| | ) | |
| Defendant. | ) | |

*** *** *** ***

This matter is pending for consideration of cross-motions for summary judgment filed by Plaintiff Joanie M. Dyer ("Dyer" or "the Claimant") and Defendant Carolyn W. Colvin, Acting Commissioner of Social Security ("the Commissioner"). [Record Nos. 16, 17] Dyer argues that the Administrative Law Judge ("ALJ") assigned to her case erred in finding that she is not entitled to a period of disability, disability insurance benefits, or Supplemental Security Insurance. Conversely, the Commissioner contends that the record contains substantial evidence to support the ALJ's decision denying benefits to Dyer, and that his decision should be affirmed. Because substantial evidence supports the Commissioner's decision, and because Dyer's arguments are without merit, the Court will grant the Commissioner's motion and deny the relief requested by Dyer.

**I.**

Dyer filed an application for a period of disability, disability insurance, and Supplemental Security Income ("SSI") benefits on December 29, 2008, alleging a disability beginning November 1, 2008. [Tr., p. 33] Her application was denied initially and upon reconsideration. [*Id.*] Dyer appeared and testified at an administrative hearing held on March 15, 2011, in Lexington, Kentucky. [*Id.*] Linda Taber, an impartial vocational expert, also testified at the hearing. [*Id.*]

The ALJ issued a decision unfavorable to the Claimant on March 24, 2011. Dyer was forty-eight years old at the time of the ALJ's decision.[1] She has a General Equivalency Diploma ("GED"). After reviewing the record and the testimony submitted during the administrative hearing, the ALJ determined that Dyer suffered from the severe impairments of "[h]istory of coronary artery disease, status-post-stenting; carotid artery stenosis without inf[r]action; chronic obstructive pulmonary disease; acromioclavicular joint crepitus of right shoulder; degenerative disc disease of the cervical spine; status-post bilateral carpal tunnel release; bipolar disorder, by history; anxiety disorder with post-traumatic stress disorder features; [and] pain disorder." [Tr., p. 36] Notwithstanding these impairments, the ALJ found that Dyer has the residual functional capacity ("RFC") to perform light work, with additional limitations. [Tr., p. 42] Specifically, he found the following limitations:

> [. . . .]lifting/carrying 20 pounds occasionally and 10 pounds frequently; standing/walking a total of 6 hours in an 8-hour workday; sitting a total of 6 hours

---

[1] There are certain discrepancies regarding Dyer's age. For example, the ALJ notes that Dyer was born on November 1, 1965; however, in Dyer's motion for summary judgment, she states that she was born on November 1, 1962.

> in an 8-hour workday; no more than frequently pushing/pulling with the [right upper extremity]; only occasionally climbing stairs or ramps; never climbing ladders, ropes or scaffolds; only occasionally balancing, kneeling, crouching, or crawling; no more than frequently handling bilaterally . . . .; no more than frequent[] overhead reaching bilaterally; she should avoid concentrated exposure to extreme cold, heat, humidity, full-body vibration, fumes, odors, dust or gases, and all hazards such as unprotected heights and dangerous machinery. She also suffers with mental impairments; however, she would be able to understand, remember and carry out simply work instructions and procedures requiring brief learning periods; sustain concentration, effort and pace for simple work tasks requiring little independent judgment and involving minimal variation and doing so at requisite schedules of work and breaks, interact frequently as needed with supervisors and coworkers and sufficiently for task completion, yet requiring no more than occasionally interaction with the public and adapt adequately to situational conditions and changes with reasonable support and structure.

[Tr., pp. 42-43].

Based on the testimony of the vocational expert, the ALJ found that Dyer could perform her past relevant work.[2] Alternatively, he found that she could perform such jobs as a housekeeper, gatekeeper, and assembler. [Tr., pp. 25-26] After determining that Dyer could perform both her past work and other work existing in significant numbers in the national economy, the ALJ concluded that she was not disabled.

**II.**

Under the Social Security Act, a "disability" is defined as "the inability to engage in 'substantial gainful activity' because of a medically determinable physical or mental impairment of at least one year's expected duration." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th

---

[2]The ALJ found that Dyer was "not disabled" at Step Four, based on his finding that Dyer could return to her past relevant work as an inspector. [Tr., p. 46] Such a finding at Step Four would moot the ALJ's finding at Step Five. However, it is not clear whether this was a mistake on the part of the ALJ. Dyer did not challenge the ALJ's finding at Step Four on appeal. But even if this finding was in error, it was harmless because the ALJ proceeded to Step Five.

Cir. 2007). A claimant's Social Security disability determination is made by an ALJ in accordance with "a five-step 'sequential evaluation process.'" *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642 (6th Cir. 2006) (en banc) (quoting 20 C.F.R. § 404.1520(a)(4)). If the claimant satisfies the first four steps of the process, the burden shifts to the Commissioner with respect to the fifth step. *See Jones v. Comm'r of Soc. Sec.,* 336 F.3d 469, 474 (6th Cir. 2003).

First, the claimant must demonstrate that she is not engaged in substantial gainful employment at the time of the disability application. 20 C.F.R. §§ 404.1520(b), 416.920(b). Second, the claimant must show that she suffers from a severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(c), 416.920(c). Third, if the claimant is not engaged in substantial gainful employment and has a severe impairment which is expected to last for at least twelve months and which meets or equals a listed impairment, she will be considered disabled without regard to age, education, and work experience. 20 C.F.R. §§ 404.1520(d), 416.920(d). Fourth, if the Commissioner cannot make a determination of disability based on medical evaluations and current work activity and the claimant has a severe impairment, the Commissioner will then review the claimant's RFC and relevant past work to determine whether she can perform his past work. If she can, she is not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f).

Under the fifth step of the analysis, if the claimant's impairment prevents her from doing past work, the Commissioner will consider her RFC, age, education, and past work experience to determine whether she can perform other work. If she cannot perform other work, the Commissioner will find the claimant disabled. 20 C.F.R. §§ 404.1520(g), 416.920(g). The

Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 785 (6th Cir. 2009) (quoting *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999)).

Judicial review of the denial of a claim for Social Security benefits is limited to determining whether the ALJ's findings are supported by substantial evidence and whether the correct legal standards were applied. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). The substantial evidence standard presupposes that there is a zone of choice within which decision makers can go either way, without interference from the court. *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). Substantial evidence is such relevant evidence as a reasonable mind might accept as sufficient to support the conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).

If supported by substantial evidence, the Commissioner's decision must be affirmed even if the Court would decide the case differently and even if the claimant's position is also supported by substantial evidence. *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007); *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007); *Longworth v. Comm'r of Soc. Sec. Admin.*, 402 F.3d 591, 595 (6th Cir. 2005); *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993). Thus, the Commissioner's findings are conclusive so long as they are supported by substantial evidence. 42 U.S.C. § 405(g).

**III.**

Dyer asserts that the ALJ erred in the determination of her RFC, and that he misapplied the treating physician rule because of the weight given to Dr. Dunaway, her long-time physician. She also argues that remand for additional vocational expert testimony is required. The Commissioner responds that the decision denying benefits to Dyer is supported by substantial evidence and should be affirmed.

**A. RFC determination**

The ALJ did not err in determining Dyer's RFC. The ALJ used the opinions of treating physicians, consultative examiners, Dyer's activities of daily living, as well as the opinions of the state agency consultants in making his determination regarding Dyer's RFC. [Tr., p. 46]

In reviewing this determination, the Court first looks to the objective medical evidence of record. In determining Dyer's physical limitations,[3] the ALJ gave considerable weight to consultative examiner Dr. Beard. During his exam, Dr. Beard saw no evidence of organ damage due to diabetes mellitus. [Tr., pp. 44, 453] Dr. Beard also observed that Dyer complained of conditions that were not severe — he found her chronic obstructive pulmonary disease and restrictive pulmonary disease to be "very mild." [Tr., pp. 44-45] Dyer's other conditions were found to be mild as well — such as a mild degree of dyspnea (shortness of breath) after exertion and mild grip strength. [Tr., p. 44] Dr. Beard found no evidence of hypertensive or diabetic

[3]Regarding her mental limitations, Dyer challenges the ALJ's conclusion that she can remember simple instructions because consultative examiner Dr. Geraldo Limo opined that she would have difficulty remembering simple instructions. However, the RFC specifically limits Dyer to simple work instructions requiring brief learning periods, little independent judgment, minimal variation, and reasonable support and structure to adapt to situational conditions and changes. [Tr., pp. 42-43] Accordingly, this argument also fails.

retinopathy; no carotid artery bruits; no evidence of organ damage due to her diabetes; and the carpal tunnel testing was equivocal.

Similarly, treating physician Dr. Lohman opined, in part, that Dyer's symptoms did not preclude her from sitting for 6 hours in an 8-hour workday without a sit/stand option. [Tr., pp. 842845] He further explained that Dyer would likely miss work less than once a month. Although the ALJ rejected certain portions of Dr. Lohman's non-medical opinions, he accepted the portions that he found to be consistent with the other evidence of record. In addition to treating and consultative physicians, the ALJ relied upon state agency medical consultant Dr. Saranga, who concluded that Dyer could perform a reduced range of light work.

ALJ Paris also observed Dyer during her testimony and found in light of the objective medical records as well as his findings regarding her credibility, that Dyer "is trying to make her symptoms sound significantly more severe than they actually are." [Tr., p. 44] He considered that the "degree of pain, shortness of breath, and other symptoms alleged by the claimant is significantly greater than that which can be reasonably anticipated based upon the objective physical findings." [*Id*.] Based on this determination and considering the physical evaluations of Dr. Beard, the ALJ found that Dyer's report of her physical limitations was "exaggerated." [*Id*.]

The ALJ considered that Dyer "engages in a wide [variety] of activities of daily living, such as personal hygiene and grooming, cooking, cleaning, laundry, driving, shopping, watching television, going to the library, handling her finances, reading, visiting with friends and family, and taking care of her pet bird." [Tr., p. 41] The ALJ also considered that Dyer related

appropriately to him during the hearing, her physicians describe her as pleasant, and that she visits with family and friends and functions in public — to shop or go to the library — on a regular basis. [*Id.*] Therefore, he found that she only had moderate limitations in social functioning. Despite Dyer's arguments on this point, the Sixth Circuit has affirmed findings in similar situations, holding that reported daily activities such as Dyer's can constitute substantial evidence in support of an ALJ's decision denying benefits. *See Tyra v. Sec'y of Health & Hum. Servs.*, 896 F.2d 1024, 1030 (6th Cir. 1990) (upholding ALJ's finding of a lack of disability where daily activities included driving, watching television, shopping, doing yard work, socializing, and visiting relatives).

There is also evidence that Dyer has been noncompliant with certain treatment. She has failed, at times, to follow a diabetic diet. [Tr., p. 39] The ALJ also noted that she has stopped taking certain medications for diabetes, hypertension, and pain control after running out. He also noted that she only "very recently" complied with her doctors' repeated orders to stop smoking, and noted that during much of her treatment, she smoked either one pack or two packs of cigarettes per day. [Tr., p. 38] And the ALJ found that this strongly indicates that her pulmonary symptoms were not as severe as alleged.[4]

---

[4]As the Commissioner notes, considerations of lifestyle, including habits such as smoking despite multiple admonitions to quit, is appropriately considered by an ALJ when evaluating the severity of impairments. *Sias v. Sec'y of Health and Human Servs.*, 861 F.2d 475, 480 (6th Cir. 1988). In *Sias*, the Sixth Circuit explained its rationale:

> The Social Security Act did not repeal the principle of individual responsibility. Each of us faces myriads of choices in life, and the choices we make, whether we like it or not, have consequences. If the claimant in this case chooses to drive himself to an early grave, that is his privilege — but if he is not truly disabled, he has no right to require those who pay social security taxes to help underwrite the cost of

Considering the objective medical evidence and the ALJ's thoughtful consideration of Dyer's demeanor and compliance with treatment, the Court finds no error with the ALJ's considerations of Dyer's credibility. Where an ALJ makes a determination regarding a claimant's credibility, that determination is entitled to great deference. *See Buxton v. Halter,* 246 F.3d 762, 773 (6th Cir. 2001). The ALJ is in a unique position to "observe the claimant and judge her subjective complaints." *Id.* In fact, an ALJ is "charged with the duty of observing a witness's demeanor and credibility." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). As a result, an ALJ's credibility determinations are "entitled to deference on judicial review." *Boyett v. Apfel*, 8 F. App'x 429, 434 (6th Cir. 2001). However, if the ALJ "rejects a claimant's testimony as incredible, he must clearly state his reasons for doing so." *Felisky v. Brown*, 35 F.3d 1027, 1036 (6th Cir. 1994).

Here, the ALJ clearly stated his reasons for finding that Dyer's complaints were exaggerated. He considered her occasional non-compliance with treatment plans, the objective medical evidence from consultative and treating physicians, and her daily activities. To the extent that Dyer has attacked the ALJ's findings regarding her credibility, the argument lacks merit.

**2. Treating physician**

Dyer also argues that the ALJ erred in rejecting the opinion of treating physician, Dr. Dunaway, regarding Dyer's work-related limitations. [Record No. 16-1, p. 8] Generally, a

---

his ride.

*Id.*

treating source's medical opinion will be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the claimant's record. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see also Walker v. Sec'y of Health & Human Servs.*, 980 F.2d 1066, 1070 (6th Cir. 1992). If the treating source's opinion is not entitled to controlling weight, this does not necessarily mean that the opinion should be completely rejected. Rather, the ALJ must determine what weight to give to medical opinion by considering the following factors: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the supportability of the opinion; (4) the consistency of the opinion with regard to the record as a whole; (5) whether the treating source is a specialist in the area of his or her opinion; and (6) any other factors which tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6). The ALJ must always give "good reasons" for accepting or rejecting a medical opinion. 20 C.F.R. §§ 404.1527(c)(2); 416.927(c)(2).

However, an ALJ need not give reasons for rejecting statements made by a treating physician when the statements concern the patient's ability to work. In that case, they constitute "opinions on issues reserved for the Commissioner because they are administrative findings that are dispositive of a case" and are afforded no special significance. 20 C.F.R. § 404.1527(d). An "ALJ 'is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation.'" *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 509 (6th Cir. 2006) (per curiam) (quoting *Buxton* ,246 F.3d at 773 (6th Cir. 2001));

*see also White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 286 (6th Cir. 2009) ("Conclusory statements from physicians are properly discounted by ALJs.").

The ALJ did not err by declining to adopt the severe limitations that Dr. Dunaway proposed, and he stated good reasons for rejecting portions of Dr. Dunaway's findings as inconsistent with the medical evidence of record as well as Dyer's daily functioning. For example, although Dr. Dunaway indicated that Dyer would be unable to carry 10 pounds or sit more than two hours in an 8-hour work-day, Dyer's ability to clean, cook, do laundry, drive, go shopping weekly, can vegetables and care for her pet bird does not support such severe limitations. In addition, his limitations conflicted with treating physician Dr. Lohman's opinion that in November 2010, Dyer was in a fair state of health with normal strength, and had the ability to conduct usual activities.[5] [Tr., p. 6] He also considered that Dr. Dunaway's limitations were considerably more severe than those suggested by Dr. Beard.

Thus, the ALJ properly explained the weight that he gave Dr. Dunaway's opinions and explained his reasons, *i.e.*, that he found Dr. Dunaway's severe limitations inconsistent with the evidence of record. Substantial evidence supports this finding. The ALJ did not violate the treating physician rule with respect to Dr. Dunaway.

[5] Dyer argues that Dr. Lohman's questionnaire only considered her cardiac problems and thus should not be considered when considering her overall limitations. However, as a treating physician, Dr. Lohman had a view of Dyer's overall health, and his opinions are not limited to her heart health.

**3. Vocational Expert Testimony**

Dyer briefly argues that the vocational expert's testimony was inconsistent with the Dictionary of Occupational Titles. However, Dyer has not shown that there were any inconsistencies in the questions posed, or the vocational expert's testimony. The Sixth Circuit has held that a hypothetical question posed to a vocational expert "need only reference all of a claimant's limitations, without reference to the claimant's medical conditions." *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004) (citing *Foster v. Halter*, 279 F.3d 348 (6th Cir. 2001)). Additionally, the vocational expert's testimony relies on the ALJ's assessment of what the claimant "can or cannot do." *Id.*

The Court previously concluded that the ALJ's determination regarding Dyer's RFC was supported by substantial evidence. Accordingly, the hypothetical question posed to the vocational expert, which properly took into account the ALJ's well-supported findings on Dyer's functional limitations, were not improper. The Court declines to remand for further vocational expert testimony.

**IV.**

Substantial evidence supports the ALJ's decision denying benefits to Dyer. Further, Dyer's arguments are without merit. Accordingly, it is hereby

**ORDERED** as follows:

(1) Plaintiff Joanie W. Dyer's Motion for Summary Judgment [Record No. 16] is **DENIED**.

(2) Defendant Carolyn W. Colvin's Motion for Summary Judgment [Record No. 17] is **GRANTED**.

(3) The administrative decision of the Commissioner of Social Security will be **AFFIRMED** by separate judgment entered this date.

This 28th day of May, 2013.

**Signed By:**
***Danny C. Reeves*** DCR
**United States District Judge**